1                IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF NEW MEXICO

3

4    UNITED STATES OF AMERICA,    )
                                  )
5             Plaintiff,          )
                                  )
6    vs.                          )No. 1:09-MJ-00319-JCH-WDS
                                  )
7    HOWARD DE LA CRUZ-BANCROFT,  )
                                  )
8             Defendant.          )

9

10

11

12

13

14              HEARING ON INTERLOCUTORY APPEAL
            BEFORE THE HONORABLE JUDGE JUDITH HERRERA
15                UNITED STATES DISTRICT JUDGE

16

17

18                    DECEMBER 17, 2009

19

20

21

22

23         Proceedings reported by stenotype.

24         Transcript produced by computer-aided

25    transcription.

**PAUL BACA PROFESSIONAL COURT REPORTERS**

Page 2

```
 1    A P P E A R A N C E S:

 2    FOR THE PLAINTIFF:    DAVID M. WALSH
                            David.M.Walsh@usdoj.gov
 3                          U.S. Attorney's Office
                            201 Third Street NW #900
 4                          Albuquerque, New Mexico 87103
                            505-346-7274
 5
      FOR THE DEFENDANT:    TODD B. HOTCHKISS
 6                          tbhotchkiss@earthlink.net
                            Frechette and Associates, P.C.
 7                          116 Granite NW
                            Albuquerque, New Mexico 87125
 8                          505-247-8558

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**PAUL BACA PROFESSIONAL COURT REPORTERS**

1          THE COURT:  Please be seated.

2          Good afternoon.  We're on the record in USA

3    versus De La Cruz-Bancroft, CR-09-MJ-319.

4          MR. WALSH:  Good afternoon, Your Honor, Dave

5    Walsh on behalf of the United States.

6          THE COURT:  Good afternoon, Mr. Walsh.

7          MR. HOTCHKISS:  Good afternoon, Judge.  Todd

8    Hotchkiss for Mr. De La Cruz-Bancroft, who is present.

9          THE COURT:  All right.  Good afternoon.

10          MR. HOTCHKISS:  Good afternoon.

11          THE COURT:  We're here on the notice of

12    appeal that was filed by the government in this case.

13    Are we ready to proceed?

14          MR. WALSH:  We are, Your Honor.

15          May it please the Court, Counsel.

16          Your Honor, with respect to the procedural

17    background on this case, the government filed a

18    two-count information against the defendant for

19    possessing a firearm in a federal facility in

20    violation of 18 USC 930, and for also possessing a

21    fraudulent identification card.

22          The defendant filed some motions.  The case

23    was assigned to Judge Schneider.  At the motions

24    hearing, Judge Schneider granted the defendant's

25    motion to dismiss the 18 USC 930 count, on grounds

**PAUL BACA PROFESSIONAL COURT REPORTERS**

1    that the defendant was carrying a holstered weapon

2    prior to entering a federal facility.

3            The standard of review for this appeal is

4    de novo, so the Court gets to look at it with fresh

5    eyes and a fresh perspective.

6            This incident took place at the Chavez

7    federal building located on 500 Gold Street.  There's

8    a security checkpoint manned by officers inside the

9    entrance of the building.  There's a post office on

10   the ground floor.  There's also a federal bankruptcy

11   court on the 11th floor.  There's a federal health

12   clinic there where I recently got a swine flu shot.

13   And there is also a Veterans Administrations office

14   located inside the building.

15           To provide a little overview of 18 USC 930,

16   Your Honor, the statute prohibits someone from

17   possessing or causing to be present a firearm or

18   dangerous weapon under subsection (a) of the offense.

19           However, under subsection (b), if someone

20   intends to commit a crime with the firearm or

21   dangerous weapon a defendant can be punishable up to

22   five years' imprisonment.

23           Subsection (c) indicates that if someone is

24   killed during the course of bringing a firearm or

25   dangerous weapon into a federal facility that they are

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    to be punished in accordance with the cross-referenced

2    statutes there in 18 USC 930.

3           And if someone is to bring a firearm into a

4    federal courthouse, as in this courthouse or the

5    courtroom or the court building or what have you, they

6    would also be subject to prosecution under 18 USC 930.

7           That offense for bringing a firearm or

8    dangerous weapon into a federal courthouse is a felony

9    punishable up -- up to two years.  In this case, the

10   defendant is charged with a misdemeanor under

11   subsection (a).

12          And if I could take a moment to grab my

13   statute.

14          Although there hasn't been a whole lot of

15   case law generated from 18 USC 930 prosecutions, the

16   law has certainly been used to prosecute people for

17   offenses committed under 18 USC 930.

18          I believe it was used in the United States

19   versus Bin Ladin case pertaining to the terrorist

20   bombings that took place in Kenya, and I believe it

21   was Sudan.  The cases cited in the government's brief

22   indicate that people have been charged with an 18 USC

23   930 offense for conduct what -- what we have that is

24   similar to this case, where someone is caught bringing

25   a weapon into a federal facility or a federal

1    courthouse.  So this is not a law that is esoteric, in

2    the sense that it's been passed and left untouched on

3    the books.

4         Before getting into the detail of the

5    government's argument, I would like to first emphasize

6    how important this appeal is.  One of the reasons that

7    our office wanted to appeal this case was the security

8    issues that are involved and how serious it would be,

9    from our perspective, to -- if -- to have precedent

10   established, if the magistrate judge's order was

11   allowed to stand, because it would allow for

12   substantially more firearms and other dangerous

13   weapons to be brought into federal facilities without

14   there being a violation of the statute.  And in

15   effect, if the magistrate judge's decision was not

16   reversed, that it would nullify, in large part, a law

17   that was designed to protect federal employees and

18   federal facilities.

19        So we think it's extremely important, perhaps

20   above and beyond the defendant's prosecution -- of

21   course that's important, as well -- but the principle

22   and possible precedent at play is crucial.

23        How did the Court reach its conclusion?  The

24   magistrate judge, in response to the defendant's

25   motion to dismiss, concluded that subsection (d) of

**PAUL BACA PROFESSIONAL COURT REPORTERS**

1    18 USC 930, which is -- which provides three

2    exceptions -- apply to the defendant's case.

3            Now, the three exceptions are -- and I'm

4    going to paraphrase the first two under 18 USC 930.

5    It says that subsection (a) shall not apply to the

6    first exception, referring to law enforcement officers

7    in the performance of their duties, essentially.

8            The second exception refers to members of the

9    armed forces.  Those exceptions are not what's at

10   issue in this case.

11           But, third, the magistrate judge determined

12   that subsection (d)(3) applied in this case, and

13   that's why the magistrate judge dismissed the firearms

14   count against the defendant.

15           Now to quote specifically that subsection, it

16   says that "subsection (a) shall not apply to the

17   lawful carrying of firearms or other dangerous weapons

18   in a federal facility incident to hunting or other

19   lawful purposes."

20           Now, there's no case law out there

21   interpreting or shedding light on "hunting or other

22   lawful purposes," at least what either party has been

23   able to come up with.  So I did -- at a last research

24   session prior to today, I still haven't found anything

25   in that regard.  There's no definition section under

1    the statute pertaining to, you know, what that could

2    possibly encompass in terms of so-called "other lawful

3    purposes."

4            Judge Schneider looked at the plain meaning

5    of the statute, according to -- based upon his remarks

6    that he made on the bench after the hearing, and then

7    according to his order.  And he did not go beyond the

8    statute and look to the legislative history or the

9    congressional intent.  And that -- that is the first

10   thing that the Court should do in this case, is to --

11   is to look at the language of the statute.  And in

12   that regard, the magistrate judge committed error by

13   assessing the language of the statute and reaching the

14   conclusion that he did.

15           The word "incident" is placed after the term

16   "facility."  So again, it reads, "the lawful carrying

17   of firearms or other dangerous weapons in a federal

18   facility incident to hunting or lawful purposes."

19           We think it's key that the word "incident"

20   comes after "federal facility," because it modifies

21   "federal facility," as opposed to it preceding the

22   phrase "carrying of firearms."

23           It modifies -- when you look at the word

24   "incident," there's a lot of -- obviously, a lot of

25   different definitions for "incident."  I looked at

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    Webster's and came up with one definition indicating

2    that "incident" is tending to arise or occur as

3    concomitant.  "Concomitant" means something that

4    exists or occurs concurrently with something --

5    something else.

6              So the word "incident" qualifies or it limits

7    the meaning of "federal facility," meaning that the

8    exception is a narrow one that does not refer to the

9    situation here where we had someone carry a firearm in

10   a holster prior to entering a federal building, but

11   rather refers to hunting or hunting-related activity.

12             Now, how could that come up?  Well, I believe

13   that the instances would be narrow, but I can think of

14   potential lodges that are on hunting lands or parts of

15   buildings where this exception would come into play.

16             Also, the fact that there are two -- that

17   there are three exceptions under subsection (d).

18   Given the fact that there were two preceding

19   exceptions, the law enforcement exception under

20   subsection (d)(1) and the armed forces one for

21   subsection (d)(2), it shows that when you take the

22   whole statute in its context, that the (d)(3) is to be

23   a narrow exception relating to a federal facility that

24   somehow relates to hunting.  Because if there was this

25   catchall subsection (d)(3) that talked about any

1    lawful possession of a firearm outside of a federal

2    building, that that would somehow encompass law

3    enforcement and armed forces as well.

4         So the point being, given the fact that --

5    these other exceptions -- it shows that subsection

6    (d)(3) is to be read in a very narrow fashion and not

7    in the manner that Judge Schneider did.

8         Now, speaking of plain meaning, Your Honor --

9    and I know it's kind of tough to follow when you are

10   parsing words from the statute and such.  But I think

11   this is an easier concept to grasp in reference to

12   plain meaning.

13        Judge -- the magistrate judge read something

14   into subsection (d)(3) that is not there.  Basically,

15   Judge Schneider came up -- his reasoning was that

16   because he lawfully possessed a firearm under state

17   law prior to entering the federal facility, that he

18   was okay under the (d)(3) exception and, therefore,

19   could not be prosecuted under 18 USC 930.

20        Well, there is no language whatsoever that

21   talks about someone's activity outside of a federal

22   facility.  The whole gist of 18 USC 930 is focused on

23   what is happening inside a federal facility or inside

24   federal buildings or federal courthouses, federal

25   courtrooms or what have you.  So the magistrate erred

1    in that regard while coming up with a plain meaning

2    basis, if you will, to dismiss the government's

3    firearms count.

4         However, even if the Court found that the

5    plain meaning still left things ambiguous, then it is

6    advised and authorized for the Court to go beyond the

7    language of the statute and look to the legislative

8    history and the congressional intent.  I -- I think

9    that there's ambiguity.  We don't have a definition of

10   what "lawful purposes" means.  We certainly don't have

11   any reference in the statute that talks about

12   someone's activity prior to entering a federal

13   facility.

14        So I think the Court should -- should look

15   beyond the statute here and look to other tools to

16   come up with an interpretation of 18 USC 930(d)(3).

17        Now when the Court looks at the congressional

18   intent, the federal law, the case law that is out

19   there which, again, doesn't address this provision but

20   provides some general parameters, and also the

21   potentially irrational results that would follow from

22   the magistrate judge's order's decision, then it

23   should conclude that the decision was wrong and the

24   government's count should not have been dismissed.

25        The major flaw that I see in the magistrate

1    judge's decision was, again, that it wrongfully took

2    into account what the defendant was doing outside of a

3    federal facility.  Again, the statute is concerned

4    with what is happening once someone enters a federal

5    facility or a federal courthouse.

6            Again, there's no language in the statute

7    that talks about being concerned about whether someone

8    is lawfully possessing a firearm prior to entering a

9    federal facility.

10           There is no case law, there's no authority

11    whatsoever, that supports the notion that if you're

12    lawfully carrying a weapon outside a federal facility

13    that you could then bring that gun or dangerous weapon

14    inside the federal facility without violating 18 USC

15    930.

16           I also think that the magistrate judge was

17    wrong in determining that there was somehow a purpose.

18    I believe that the term "purpose" connotes some type

19    of activity like hunting or perhaps target shooting or

20    going inside some type of lodge to get a permit for

21    hunting.  I don't think someone's carrying of a

22    holstered weapon under New Mexico state law, prior to

23    entering a federal facility, somehow constitutes a

24    purpose under the meaning of the statute.

25           The Court, Your Honor, also ordered --

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1  because it took state law into account.  Federal law

2  trumps state law and not vice versa.  In motions to

3  suppress, as the Court knows, the defendant may have

4  arguments under state law that he cannot bring if he's

5  alleging a Fourth Amendment violation in federal

6  court.  Likewise, somebody can be federally prosecuted

7  for being a felon in possession of a firearm, even if

8  a state didn't punish that same conduct, whether it be

9  that a state didn't have a felon in possession law or

10  whether the state has a -- for instance, New Mexico

11  has a ten-year time limit as to when someone could be

12  prosecuted in state court for being a felon in

13  possession of a firearm.

14       Federally, there is no such limit, and state

15  law does not prohibit from -- us bringing federal

16  felon in possession prosecutions in -- against

17  defendants that have priors that are older than ten

18  years.

19       Of course we know from history that the Jim

20  Crow laws of the '60s were thrown out because of

21  federal law.

22       The New Mexico Constitution, Your Honor does

23  not give a person the right to bring a gun into this

24  courtroom or this courthouse, does not give a person

25  the right to bring a weapon onto the grounds of the

1    Kirtland Air Force Base, and it does not provide a

2    so-called lawful purpose to bring a firearm into the

3    federal building on Gold Street.  Once you enter a

4    federal enclave, Your Honor, whatever state gun rights

5    you have don't matter.

6            In fact, there is nothing in the New Mexico

7    Constitution or under New Mexico case law or under

8    New Mexico statute that indicates that state gun laws

9    would allow someone to go into a federal building or

10   would allow someone to violate existing federal

11   firearms laws on the books.

12           There is one carrying a concealed weapon

13   offense under state law.  It's 30 dash -- excuse me.

14   That's unlawful carrying of a deadly weapon.

15           That is 29-19-8, and that is the Concealed

16   Handgun Carry Act, under the part referring to

17   limitation on license.  And that law indicates that

18   nothing -- I'll read straight from it -- "Nothing in

19   the Concealed Handgun Carry Act shall be construed as

20   allowing a licensee in possession of a valid concealed

21   handgun license to carry a concealed handgun on the

22   premises of a preschool."

23           That's subsection (c).  What I wanted to read

24   was subsection (a) which said, shall be -- nothing in

25   the law -- I'm paraphrasing there -- shall be

Page 15

1   construed as allowing a licensee in possession of a

2   valid concealed handgun license to carry a concealed

3   handgun into or on premises where to do so would be in

4   violation of state or federal law.

5           Now, defendant's situation was different --

6   different.  He was carrying a holstered firearm.  We

7   are not contending that he violated the state law by

8   his open carrying of a weapon.  And -- and except that

9   it is lawful under the State of New Mexico.

10          However, I think it's important to note that

11  someone's constitutional right to bear arms under the

12  New Mexico Constitution is not unfettered.  We still

13  have state laws that prevent people with weapons to

14  going on school grounds, to going onto a university,

15  to going into a liquor establishment.

16          Then we have this concealed handgun

17  restriction saying you cannot go in -- this doesn't

18  mean you can bring a concealed weapon into a federal

19  facility.

20          I think the upshot is that even state law

21  does not contend that there is a green light for

22  defendants to bring firearms into federal facilities

23  or federal courtrooms, as prohibited by law.

24          The recent case, Your Honor, of District of

25  Columbia versus Heller, I guess is now a seminal case.

**PAUL BACA PROFESSIONAL COURT REPORTERS**

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    It ruled that the right to bear arms is an individual

2    right as opposed to a collective one.

3           However, in so doing, the Court pointed out

4    that, quote, nothing in our opinion should be taken to

5    cast doubt on the longstanding prohibitions of the

6    possession of firearms by felons and the mentally ill

7    or laws forbidding the carrying of firearms in

8    sensitive places, as schools and government buildings.

9           Now, I understand that, you know, the

10   defendant didn't challenge the constitutionality of

11   18 USC 930, and Judge Schneider did not make its

12   ruling on constitutional grounds.  However, I believe

13   what's important about the Supreme Court recognizing

14   the legitimacy of certain federal firearms

15   prohibitions in terms of laws regarding felons and the

16   prohibition of weapons in government buildings is that

17   the Supreme Court did not make any mention whatsoever

18   that such federal laws need to be subject to state

19   laws, or in any way could be superseded by them.  And

20   I think it's also important that the Supreme Court

21   recognized that government buildings are sensitive

22   places.

23          A case cited in the government's brief,

24   Your Honor, is United States versus Rodriguez.  It's

25   an Indiana case.  And, again, it didn't speak to this

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 17

1   particular clause.  I believe, from my memory, it

2   dealt with a parking lot can somehow consist of a

3   federal facility.

4           However, the United States versus Rodriguez

5   case did recognize that the purpose behind the statute

6   of 18 USC 930 was to protect federal facilities and to

7   protect federal employees, which makes sense,

8   especially in a post-9/11 world, certainly, with the

9   McVeigh case, where the federal building was blown up.

10          And looking towards the legislative history

11   which is cited in the government's brief, the

12   discussion at that time concerning the bill indicated

13   that, quote, the provision is intended to protect

14   federal employees, witnesses, judges, and others

15   present in places where the business of the federal

16   government is conducted.  It is not limited to

17   buildings owned and maintained by the federal

18   government, because some -- because some government

19   employees, such as assistant United States attorneys

20   and federal tax and law enforcement agents often have

21   offices in commercial buildings.

22          Kind of like us at the US Attorney's office

23   at the Bank of Albuquerque building, it's a commercial

24   building.  We have federal floors there, and there's a

25   sign outside of the entrance that cites the 18 USC

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 18

1   930, saying you can't bring firearms in.

2         That same sign is inside the entrance here at

3   the security checkpoint, again referencing 18 USC 930.

4         Continuing on with the legislative history, I

5   quote, that it is not intended, however, to prohibit

6   the carrying of firearms on federal lands for hunting

7   or other lawful purposes.

8         So that's what we have from the legislative

9   history.  And why is that important?  It shows that's

10  what they were thinking at that particular time.  One,

11  they were very much concerned about security and

12  protection, but they wanted to except hunting-related

13  activity.  And at the time, they were thinking of

14  federal lands.  And so that morphed -- the final

15  version of the bill morphed into -- "lands" got

16  changed.  It became "a federal facility."

17        But it's important to note, Your Honor, that

18  there's nothing in the legislative history that speaks

19  of deferring to state -- state gun rights, or that

20  "incident to hunting or other lawful purposes" will

21  hinge on whether someone is lawfully possessing a

22  firearm outside of a federal facility.

23        There's nothing in the legislative history,

24  Your Honor, that indicates that Congress intended to

25  afford more or less protection to federal facilities,

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1   depending on what states they were located in and what

2   state laws were in that particular state.

3          The legislative history speaks of providing

4   protection and -- except in situations involving

5   hunting on federal lands.

6          Your Honor, it is also permissible for the

7   Court to look beyond the statute, and -- if it

8   determines that irrational results will follow if a

9   law or a provision is interpreted in a particular way.

10  We contend that irrational results will follow if the

11  magistrate judge's order is not reversed.  It allows

12  people to bring -- the magistrate judge's order -- it

13  allows people to bring weapons into federal facilities

14  as long as they're lawfully possessing those weapons

15  outside of the federal facilities.

16         Well, the possibilities become very broad,

17  indeed.  You can -- in New Mexico, you can carry

18  holstered weapons, shoulder -- you can have a holster

19  around your shoulder, you can have it on your waist,

20  you can have a rifle slung across your person, or a

21  shotgun.

22         Other states have -- as the defendant has

23  indicated in his brief, there are a number of states

24  that allow for the open carrying of weapons.  That

25  would open up the doors in those places, if that logic

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    is extended where they can bring weapons into the

2    federal facilities in other states.

3           It is possible, Your Honor, to lawfully

4    possess certain dangerous weapons like high-grade

5    dynamite or fully-automatic machine guns.  Someone has

6    to get a stamp from the Department of the Treasury and

7    has to go through a certain background procedure.  But

8    people out there do own fully-automatic machine guns

9    and are lawful in doing so.

10          Well, taking a look at the magistrate judge's

11   reasoning, they would then have this same out, under

12   the statute, where they could say, "Well, I was

13   lawfully possessing this machine gun prior to entering

14   a federal facility."  And it essentially would turn

15   the entire statute on its head, where it would allow

16   for the introduction of a substantial number of

17   firearms for people who are lawfully carrying them

18   outside of the building to bring them inside federal

19   facilities.

20          You would -- it would create a bizarre

21   situation, where the state -- where federal protective

22   service officers would have to determine somehow

23   before arresting someone or seizing a weapon if, under

24   state law, they were supposed to -- that they were

25   carrying it in a concealed or unconcealed fashion

**PAUL BACA PROFESSIONAL COURT REPORTERS**

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 21

1    prior to entering the federal facility.

2         I think it could result in a lot of

3    litigation, in terms of someone saying, "Well, I have

4    a right to have this firearm under the New Mexico

5    Constitution," or Maine, or whatever the case may be,

6    "that you can't take this firearm away from me, and

7    this -- this law 18 USC 930 does not apply."

8         Your Honor, I think when you look at the

9    plain -- look at the language of the statute -- I have

10   been using the term "plain meaning." If you look at

11   the language of the statute, you can conclude that the

12   magistrate judge got it wrong because -- two things:

13   "incident" modifies "federal facilities." And,

14   secondly, there's no mention in the language

15   whatsoever that it's concerned with conduct outside of

16   a federal facility.

17        But if the Court wants to go beyond the

18   language of the statute, which I think it would be

19   justified in doing so, you'd find that the legislative

20   history and the congressional intent was to protect

21   federal employees and federal facilities. And that to

22   interpret and allow it to stand, the magistrate

23   judge's decision would have the exception -- devour

24   the whole gist of the statute. And I think the Courts

25   should read the statute to the point where it gives it

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 22

1    its true meaning and effect, and it salvages it from

2    being nullified.

3         I'll have a few remarks on rebuttal, if

4    that's okay with the Court.  And nothing further at

5    this time.

6         THE COURT:  All right.  Thank you.

7         All right.  Let me hear from the defense,

8    Mr. Hotchkiss.

9         MR. HOTCHKISS:  May it please the Court and

10   Mr. Walsh.

11        Your Honor, we respectfully request that you

12   affirm Judge Schneider's ruling.

13        First of all, I think there were things that

14   Mr. Walsh argued that have never been presented in

15   this case, either in the -- his response below, in his

16   argument below, in his reply, in his brief in this

17   case.

18        For instance, his analysis of the word

19   "incident" appears nowhere.  It wasn't in his response

20   below, so he's raising arguments in oral argument here

21   for the first time that he hadn't even raised

22   previously.

23        The fact that it's a de novo standard of

24   review does not eliminate the fact that this is an

25   on-record appeal subject to waiver.  We believe that

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    argument has been waived.

2           There is -- you can -- you can certainly

3    review the -- his pleadings, Your Honor, but there is

4    no argument from Mr. Walsh anywhere in this case on

5    the definition of the word "incident."  I have made

6    that argument, but Mr. Walsh never responded.

7           Similarly, his argument regarding "purpose,"

8    there is no argument from Mr. Walsh anywhere except

9    today in oral argument about "purpose" meaning

10   conduct.  There is no argument from Mr. Walsh.  Again,

11   we believe that was not raised and should be

12   considered waived by the government.

13          The final point along those lines is there is

14   no evidence in this record about the things that

15   Mr. Walsh said is -- are located within 500 Gold.

16   There was no testimony, there are no facts; similarly

17   waived.

18          The --

19          THE COURT:  You would agree, however, that

20   500 Gold is a federal facility?

21          MR. HOTCHKISS:  We have not disputed that it

22   is a federal facility.  And as a federal facility,

23   Your Honor, it's a very -- very interesting, because I

24   think I've laid out in my brief how it -- that the law

25   treats that the three exceptions under subsection (d)

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    apply to federal facilities, but the three exceptions

2    under (d) do not apply to a federal court facility.

3    Only (d)(1) and (d)(2) apply to a federal court

4    facility.  That is a clear indication that Congress

5    did look at these statutes and did allow for broader

6    possession of firearms in federal facilities versus

7    federal court facilities, as I pointed out in the

8    brief.

9          The government has referred to cases -- three

10   cases that it had cited on page 10 of its brief about

11   other -- I think the word was "similar."  The word is

12   used on page 10 of the government's brief, that --

13   presenting fact patterns that are similar to the one

14   in this case.  Well, that's just not true.

15         Two of those cases -- one involves a pistol

16   carried in a gym bag.  That's a concealed firearm.

17   The firearm wasn't concealed in this case.

18         The firearm in Carson was in a briefcase.

19   That's not the case here.  It was open carried, so

20   it's very different.

21         And finally, in the Murray case, this issue

22   was not even presented.  So I don't know why this

23   issue wasn't presented, but it wasn't presented.  So

24   those cases aren't similar to this case.

25         The word -- as I have presented in my

1  brief -- the word "incident," Your Honor, does modify

2  the possession.  It's lawful possession incident to

3  hunting or other lawful purposes.

4       The word "incident" does not modify "federal

5  facility."  It modifies lawful possession incident to

6  hunting or other lawful purposes.

7       And the biggest indication of that is the

8  fact that you cannot hunt in a federal facility.  A

9  federal facility is a building containing federal

10  employees.  You can't hunt in a federal facility.

11       So the phrase "incident to hunting or other

12  lawful purposes" then logically must mean what one was

13  doing before you entered the federal facility, from

14  the plain meaning of the words of the statute.

15       Also the statute -- Mr. Walsh had stated that

16  part of the parade of horribles is that he asserted

17  that as long as somebody is lawfully possessing a

18  weapon or dangerous -- they can get -- take that

19  weapon into the federal facility, under Judge

20  Schneider's ruling.  Clearly, an incorrect statement

21  of the law.  You have to be lawfully possessing

22  incident to hunting or other lawful purposes.

23       So as I stated in my brief, somebody could be

24  lawfully possessing but for an unlawful purpose.  And

25  you cannot then lawfully carry that weapon into the

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    federal building.

2            So lawful possession is not enough.  You have

3    to lawfully possess for a lawful purpose.  Similarly,

4    you couldn't unlawfully possess for a lawful purpose.

5    You have to have both things.

6            And in our case, we did.  And because of the

7    language of the statute and because unequivocally

8    under Article 2, Section 6 of the New Mexico

9    Constitution, open carrying of a firearm is completely

10   constitutional.  It is so constitutional, Your Honor,

11   that the case that recognized that, that I cited in my

12   brief, which is the case of -- it's on page 4 of my

13   brief, Your Honor -- City of Las Vegas versus Moberg.

14   In that case, Moberg open carried a firearm into a

15   police station and was charged with violating a city

16   ordinance.  And the appellate court in the State of

17   New Mexico reversed and said, under Article 2,

18   Section 6, that is not unlawful.

19           I'm not surprised that any -- that nowhere in

20   the New Mexico State Constitution or the New Mexico

21   State statutes is there any attempted authorization

22   for carrying into federal buildings.  I mean, that's

23   clearly outside the purview of the legislature of the

24   State of New Mexico.  That doesn't surprise me.

25           But where it becomes relevant here is the

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    plain language and plain meaning of (d)(3) of 18 USC

2    930 that says "incident to hunting or other lawful

3    purposes."

4         The purpose here, as plainly stated by the

5    plain language of Article 2, Section 6 of the

6    New Mexico Constitution, is self-defense.  That is a

7    purpose.  That's why people carry firearms lawfully.

8    And that is written right into the state Constitution.

9    That is the purpose.

10         So the word "purpose" doesn't have any -- I

11    think the -- I mean, the purpose is stated right in

12    the face of Article 2, Section 6 of the New Mexico

13    Constitution.

14         Also, as I pointed out in my brief, that

15    there is a part of Judge Schneider's ruling that the

16    government didn't address in its brief and didn't

17    address in its oral argument this morning.  And that's

18    the specific part -- the specific part of Judge

19    Schneider's ruling concerning the most serious concern

20    that Mr. Walsh has, which is the safety of federal

21    employees.  And Judge Schneider, in part of his oral

22    ruling from the bench, specifically addressed that.

23    The government has not addressed it at all in its

24    brief or in its oral argument to you today.

25         Judge Schneider believes, and I think it is

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 28

1    supported by an expressed provision in 930, that

2    this -- in complementing his ruling -- that 930(d)(3)

3    does not criminalize Mr. De La Cruz-Bancroft's conduct

4    in this case; that that ruling does not disarm the

5    ability to prohibit people from entering the building

6    with weapons.  Judge Schneider's specific ruling was

7    those decisions can still be made.

8            And in fact, if we act -- if we look at the

9    conduct in this case on the day in question,

10   Your Honor, let's look at what happened.

11           Mr. De La Cruz-Bancroft walks in, open

12   carrying a firearm.  The first person he encounters at

13   the checkpoint lets him go through.

14           Mr. Miller encounters him later on and

15   determines that Mr. De La Cruz-Bancroft cannot possess

16   the firearm in the building.  Does he arrest him?  No.

17   He asks him, "You have to take that outside, and then

18   you can come back and resume your business."  And

19   that's what happened.  That is Judge Schneider's

20   ruling.  That's the way Judge Schneider would have it

21   work under his ruling without a criminal charge.

22           Here's another example to, I believe, support

23   Judge Schneider's interpretation of the statute and

24   mine, and we'll use the US Attorney's office as an

25   example.

**PAUL BACA PROFESSIONAL COURT REPORTERS**

1          Where the US Attorney's office is located is

2    in a commercial building.  It's not owned by the

3    federal government.  It's not a federal lands deal.

4    To my knowledge, under the laws of the State of

5    New Mexico, I believe I could open carry a firearm

6    into the Hyatt Hotel.  I could go into the elevator

7    with the intent on going to a floor where there is no

8    federal facility, whatever floor that may be.

9          Let's say, by mistake, I get off on the floor

10   where the US Attorney's office is.  So while I'm in

11   the elevator I'm lawfully possessing.  I mistakenly

12   get off on the floor of the US Attorney's office and I

13   take a step out, and there is Mr. Walsh with

14   Mr. Miller.

15         Under Judge Schneider's ruling, I would

16   not -- I should not be -- I have not violated a

17   criminal statute, because I was lawfully possessing

18   incident to a lawful purpose, and I step out onto this

19   floor.  That's what I believe the statute -- it's that

20   kind of a situation, where the language makes complete

21   and plain sense.

22         Just like when Mr. De La Cruz walks in off

23   the street, just like a hunter who is lawfully

24   hunting -- because you can't hunt in a federal

25   facility.  The only thing you would hunt in a federal

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1   facility are human beings, and that would be a crime.

2          So just like a hunter, who is lawfully

3   possessing pursuant to the activity of hunting, steps

4   into a federal facility, they're not in violation of

5   the statute, just like Mr. De La Cruz-Bancroft.

6   That's the case.  That's how the statute interacts

7   with the facts.  That's why the statute (d)(3) --

8   incidentally, the government apparently doesn't

9   challenge the plain meaning of subsection (a).

10          See, this isn't an attack on the entire

11  statute, Your Honor, plain meaning.  This is a

12  selective attack on one portion of it, because

13  Mr. Walsh hasn't attacked the plain meaning of (a) or

14  any other part of the statute.  It is a part of (d)(3)

15  that he is complaining is not plainly worded.  We

16  believe it is all plainly worded, as did Judge

17  Schneider.

18          For all of those reasons, Your Honor, that is

19  why, under this statute, why Article 2, Section 6 of

20  the New Mexico Constitution is relevant.

21          Question:  Does federal law define when

22  somebody is lawfully hunting or does state law?

23          I believe that is a state law question.  I

24  don't know of any federal law, unless it pertains to a

25  federal preserve.  But hunting is typically a state

1    law matter.

2           And I just want to echo some of what

3    Mr. Walsh said concerning the Heller case.

4    Your Honor, I -- I don't think that has, really, any

5    relevance here at all.  I mean, that was a Second

6    Amendment case, where we're not arguing Second

7    Amendment here.  And we are not disputing the validity

8    of the statute; we're attempting to determine its

9    meaning.

10          So I -- I see that -- well, we didn't file a

11   motion to have the statute declared unconstitutional

12   or anything of that nature.

13          I believe I made a very thorough argument in

14   my brief regarding if you disagree with Judge

15   Schneider's finding that the statute was plain -- and

16   I believe I made a thorough argument about that.

17          I think that the legislative history here

18   offered by the government just is not -- I mean, to

19   say it's not helpful is to be very charitable.  It's

20   actually extremely confusing, because it talks -- the

21   two confusing parts about it is that part cited by the

22   government.  In the first part of that it contains a

23   flat prohibition on carrying firearms into federal

24   facilities, and that clearly isn't the case under the

25   statute.  There are three exceptions.

1          And then the last point, that it pertains to

2    federal lands, well, this isn't a statute pertaining

3    to federal lands.  It's a statute pertaining to

4    federal facilities and federal court facilities.

5          And it's actually worse than not helpful,

6    it's confusing.  And this is exactly the kind of case

7    where, as some of the law I cited to, that one should

8    be cautious to look behind the plain meaning of words

9    in the statute.

10          And this is a good example of why, to look at

11    something like legislative history, because the

12    offered legislative history is confusing, at best, and

13    tends to insert words.  It's only if you want to look

14    at the legislative history.  In my opinion, the

15    statute becomes confusing or ambiguous by throwing new

16    phrases and new words into the statute that it plainly

17    does not contain.

18          And then I think finally, Your Honor,

19    pertaining to the irrational and absurd results, I --

20    I don't see this as complicated, like Mr. Walsh sees

21    this.  I mean, we all know that police officers have

22    to deal with a lot, and we're not talking even about

23    police officers here.  But this federal building or

24    federal facilities do not move.  They are in their

25    building.  So the state law rarely changes on

1    firearms.  But all -- if you're working at a federal

2    facility in the state of New Mexico, you just have to

3    know the state law.  Just like you have to know the

4    state law about other things.  I -- I don't -- I don't

5    understand that that's that complicated.

6            I'm not aware of the law regarding whether

7    it's legal to walk down the street with a stick of

8    dynamite.  Admittedly, I don't.  But I think all of

9    that, again, is -- falls under the umbrella of the

10   part of Judge Schneider's ruling that Mr. Walsh hasn't

11   even addressed.

12           Just like down below, Your Honor.  I mean, to

13   my understanding, the way things work in this

14   courthouse is that if you look at the statute, police

15   officers and military people should be able to bring

16   their weapons into the -- this courtroom.  I believe

17   they're required to check them downstairs.  I don't

18   understand why that can't be the case in a federal

19   facility, or require them to take them back to their

20   vehicle, like Mr. De La Cruz was in this case; that we

21   don't have to twist words to make activity criminal to

22   be able to regulate the activity.

23           And I believe that's the heart of Judge

24   Schneider's ruling, the complete ruling of Judge

25   Schneider.  So for all of those reasons, Your Honor,

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 34

1    we would request that you affirm Judge Schneider's

2    ruling, and remand this to enforce the dismissal

3    order.

4            Thank you.

5            THE COURT:  Thank you, Mr. Hotchkiss.

6            Anything further?

7            MR. WALSH:  Yes.  Just some rebuttal points,

8    Your Honor.

9            Your Honor, with regards to me asking the

10   Court to look at "incident" and "purpose," I'm not

11   spinning any new case law interpretation.  I'm asking

12   the Court to take a look at the statute, like it

13   should.  And I believe the Court can certainly consult

14   a dictionary, as well, and come up with an

15   interpretation of -- or a definition, rather, of

16   "incident."  So there have been -- certainly has been

17   no waiver there, in terms of arguments that the

18   government can present.  This is de novo.

19           It has been stipulated that the federal

20   facility we're talking about is the one on 500 Gold

21   Street.  True, some of the federal offices that were

22   there -- and I didn't make mention of those in a brief

23   or beforehand.  I was just trying to provide some

24   backdrop.  It doesn't matter, in terms of the Court's

25   ultimate decision.

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 35

1        Counsel made the comment that one cannot hunt

2   in a federal facility.  That's true.  But one can have

3   a federal facility that relates to hunting, and that's

4   what subsection (d)(3) refers to.

5        And he goes on to say that, logically, it

6   must means what one was doing before entering the

7   facility matters, but there's no language to that

8   effect in the statute.  There's no case law to that

9   effect.  There's no authority whatsoever that 18 USC

10  930 in any way is supposed to take into account what

11  someone is doing prior to entering a federal facility.

12       That's where the magistrate judge's order was

13  flawed, and that's one main reason that the magistrate

14  judge got it wrong.

15       Counsel went on to again cite the New Mexico

16  Constitution and some New Mexico case law.  It does

17  not matter.  It has no bearing on 18 USC 930.  It has

18  no bearing in this court.

19       I don't get Counsel's argument as to what the

20  lawful purpose was.  I mean, essentially, now anyone

21  can say --

22       THE COURT:  Self-defense is what I

23  understood.

24       MR. WALSH:  Yeah.  I think, basically, now

25  anyone can say self-defense, put a weapon on their

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1   person, and go into a federal facility.  And I think

2   it's important, Your Honor to realize that federal

3   facilities are varied.

4           We talked about the US Attorney's office.  We

5   don't have a whole lot of security there.  We've got

6   some security here.  We have ATF, which is on the 15th

7   floor, and there's no security personnel.  Outside of

8   the offices there we have 18 USC 930 signs.

9           And so in reference to his comment about

10  Judge Schneider saying, "Well, there are no security

11  concerns.  Just tell someone they can't bring a gun

12  into a federal facility."  Well, that doesn't help

13  much.  By just telling someone that they can't bring a

14  gun, that doesn't do much to further the objectives

15  behind the statute, which is to protect federal

16  employees and protect federal facilities.

17          And it certainly doesn't give much comfort, I

18  would think, to employees of whether it be a federal

19  court or a federal facility, that if someone is

20  lawfully possessing a firearm outside a federal

21  facility can walk in, and the only thing that they are

22  subjected to is some type of oral reprimand.

23          I mean, we have laws on the books to deter

24  particular conduct.  And if you don't have any laws --

25  or teeth to those laws, then what's to stop people

**PAUL BACA PROFESSIONAL COURT REPORTERS**

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1   from trying to sneak firearms into federal facilities?

2   At worst, they face an oral reprimand.

3         Now we heard about the concealed -- made

4   mention of the concealed carrying law where it said,

5   well, nothing should be construed about this allowing

6   you to go into a federal building.

7         But taking the logic further, I mean,

8   couldn't someone then argue, "Well, under a carry

9   concealed situation, that I was lawfully possessing it

10  prior to entering a federal facility and, therefore, I

11  was lawful in trying to bring it into a federal

12  facility"?

13        In reference to the dynamite and machine gun,

14  that the possibilities are -- are myriad.  When you

15  take into account all of the state laws that are out

16  there, again, you can lawfully possess a whole lot of

17  weapons and sometimes lawfully possess destructive

18  devices.  Again, it does not matter whether you can

19  lawfully possess something, assert a self-defense

20  basis behind that, and then be allowed to bring it

21  into 18 USC 930.

22        Counsel went on to give some facts about what

23  happened when the defendant went into the federal

24  security building -- excuse me -- the federal building

25  on Gold Street.  He left out the part that the

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1   defendant was wearing a badge and flashed a fraudulent

2   identification.  I don't think it matters for the

3   purposes of this appeal, but I just thought I'd fill

4   in the facts for Your Honor on that.

5           As to how Inspector Miller handled the

6   situation, that's not relevant for the purposes of

7   this appeal.  We'll let the jury decide, if we get

8   there, as to the import of all of that.

9           I'm not given much comfort, if someone is --

10  at the US Attorney's office is wearing a holstered

11  firearm and, at best, I can ask them to remove that

12  firearm.

13          Can I call the police?  Can that person be

14  arrested?  Perhaps for trespassing.

15          Can they be arrested for a violation under

16  18 USC 930?  Well, no, if the magistrate judge's order

17  stands, because they will have that holstered weapon

18  self-defense argument to present.  And that flips the

19  statute on its head.

20          You know, when the whole statute was designed

21  to protect people, to allow the administration of

22  justice, the administration of federal business with

23  some security, I think that that kind of nullifies a

24  large portion of the statute, and it should not be

25  interpreted to do that.

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 39

1        Now the relevance of the Keller decision,

2   again, I -- I stated there's no constitutionality

3   argument that was pitched, and I understand that.  But

4   even the Supreme Court has recognized that government

5   buildings are sensitive, and that is key.

6        Now as to Mr. Hotchkiss' confusion as to the

7   legislative history, I don't quite understand

8   what's -- what the confusion is with respect to that.

9        Two points.  One, they're concerned about

10  security.  They want to protect federal employees and

11  federal facilities.  Secondly, that exception referred

12  to federal hunting, of hunting relating to federal

13  lands, like a situation like a lodge, not a situation

14  that was -- that took place in this case.

15       And I don't think there was any word twisting

16  that has gone on on behalf of the government.  Again,

17  there's no language in the statute that makes

18  reference to state law or what someone was doing prior

19  to entering the federal facility.

20       We contend that the stakes are important,

21  indeed, because of the security-related issues.  We

22  disagree with the magistrate judge in saying that

23  there wouldn't be security concerns, because then

24  someone could not be punished under 18 USC 930, and

25  there would be no deterrence effect but for some type

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    of oral reprimand.  Federal facilities would not be

2    protected.

3          It would allow a defendant, such as we have

4    here, to be emboldened and to continue to wear a -- a

5    holster with a firearm into the numerous federal

6    facilities, whether it be the IRS building, ATF,

7    whatever the case may be.  We think it opens up the

8    floodgates as to the possible weapons that someone

9    could lawfully possess and say, "I have it for

10   self-defense," and bring it into a federal building.

11   Then what happens?

12         So for those reasons, Your Honor, we request

13   of the Court that it reverse Judge Schneider's

14   decision with respect to dismissing the violation, or

15   the 18 USC 930 count against the defendant.

16         Thank you.

17         THE COURT:  All right.  Let me just give you

18   some of my thoughts here, and you can comment.

19         MR. HOTCHKISS:  Your Honor?

20         THE COURT:  Yes.

21         MR. HOTCHKISS:  If I may, I just want to --

22         THE COURT:  Okay.

23         MR. HOTCHKISS:  No more argument.  I want to

24   correct one thing I said.  And that is that when I

25   used the example of the US Attorney's office in

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 41

1    getting off the elevator, it was my error.  The US

2    Attorney's office actually falls within the category

3    and definition of a federal court facility under

4    (g)(3) of the statute.

5         I would just simply suggest that you

6    substitute the federal public defender's office for

7    the US Attorney's office for my remarks.  Because that

8    would confuse it, and it was, in fact, factually

9    wrong.  So I just wanted to correct that for the

10   record.

11        THE COURT:  All right.  So we have a

12   situation here where we have a federal statute that

13   prohibits a person from possessing a firearm or other

14   dangerous weapon in a federal facility.

15        We have, also within this statute, several

16   exceptions to that.  And so then, of course, we are

17   faced with a situation as to whether or not one of the

18   exceptions applies in this case.

19        Now, I understand Judge Schneider's ruling.

20   I understand the government's position here, that the

21   decision that Judge Schneider made would basically

22   undermine the statute.

23        And I understand -- I understand Judge

24   Schneider's determination that a federal facility

25   could still -- there could still be a prohibition

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1   against the carrying of firearms into a federal

2   facility.  The question is whether or not it would be

3   criminalized to carry a firearm into a federal

4   facility.

5          So here, the exception that we're dealing

6   with speaks to the lawful -- the prohibition doesn't

7   apply to the lawful carrying of firearms in a federal

8   facility incident to hunting or other lawful purposes.

9   So from everything I've determined, there isn't much

10  case law to help us with the meaning of "other lawful

11  purposes."

12         And so I am -- basically, I'm looking at the

13  statute.  I'm looking at the plain language of the

14  statute.  "A federal facility" seems to me to say

15  "federal facility," as opposed to federal lands.  But

16  I understand the argument that you might have federal

17  lands that contain a building that is a federal

18  facility.  So I understand your argument.

19         One of the issues in my mind is where, here,

20  you've got the lawful carrying of a firearm in a

21  federal facility incident to -- well, we know it's not

22  hunting, or at least I assume it's not hunting.  So it

23  is incident to other lawful purposes.  And I'm not

24  clear how other lawful purposes should relate to

25  federal facility.

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1          So for example, in the previous, the first

2     two -- actually, I'm not even real clear on the second

3     exception, the armed forces exception.

4          The first exception, with respect to law

5     enforcement, it looks like -- it appears as though in

6     that exception the exception exists so -- almost as a

7     security measure.

8          I'm not quite sure about the second

9     exception, the possession of a firearm by a member of

10    the armed forces.  I'm just -- I'm going to disregard

11    those two exceptions because they don't apply, anyway.

12         But the third exception, do I look at the

13    purpose -- I understand the government's argument

14    looked to the other lawful purpose with relation to

15    the federal facility.  Any -- am I supposed to look

16    at, in interpreting this statute, the purpose that the

17    defendant took the gun to the federal facility?  Am I

18    supposed look at that?  Is that a question at all, in

19    interpreting the statute?

20         And I'm kind of going here on stream of

21    consciousness.  So if -- and I realize that.  So if

22    I -- if you have questions about my thoughts please

23    feel free to ask me.  Because, honestly, I'm trying to

24    work my way through this after having heard your

25    arguments.

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 44

1          So I guess what I'm saying is, is the other

2     lawful purpose supposed to be related to, somehow, the

3     federal facility?

4          MR. WALSH:  Your Honor, I -- I think the

5     word, again, "incident," modifies "federal facility."

6     So I -- I think it does.  I think we're -- what it

7     means and what it refers to is some type of facility

8     that is somehow interconnected with hunting, like a

9     lodge on -- in the Yellowstone National Park or -- and

10    that the lawful purposes would have to be some

11    activity that is consistent with hunting, something

12    like target shooting, or maybe some type of armory on

13    national land.

14         So I -- I think it's very narrow, in terms of

15    what lawful purposes can be construed as, because it

16    is preceded by "hunting."  And "incident" modifies the

17    "federal facility," in terms of what kind of federal

18    facility would qualify for the (d)(3).

19         MR. HOTCHKISS:  In response, I don't see how

20    "incident" modifies "federal facility."  We're talking

21    the -- the statute -- what is criminalized in the

22    statute isn't federal facility, it is the possession

23    of the firearm in a federal facility.  So the

24    exception must apply to the possession of a firearm.

25         And so the "incident" modifies the lawful

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    carrying language in a federal facility incident to

2    hunting or other lawful purposes.

3           Under Mr. Walsh's argument, the easiest way

4    for the statute to be worded, to read the way he wants

5    it to be, would be "hunting or related purposes."  It

6    doesn't say that.  It says "hunting or other

7    purposes."  If it was to be like Mr. Walsh would say

8    it, that's how it would say it, hunting or related

9    purposes, but it doesn't say that.

10           THE COURT:  Well, if you just forget about

11    hunting for a moment, and if you just read it, "this

12    shall not apply to the lawful carrying of firearms or

13    other dangerous weapons in a federal facility incident

14    to other lawful purposes," what does that mean to you?

15           MR. HOTCHKISS:  Well, I think you probably

16    would have to take -- if you're going to take

17    "hunting" out, the "hunting" and the "or," then you

18    probably have to take the "other."  So it would be

19    "incident to lawful purposes."  Then that would be a

20    lawful purpose.

21           THE COURT:  But what is the purpose that

22    we're dealing with here, then?

23           MR. HOTCHKISS:  Well, I think, for instance,

24    by the plain meaning of Article -- the plain words of

25    Article 2, Section 6 -- and not just that.  But why

**PAUL BACA PROFESSIONAL COURT REPORTERS**

Page 46

1    do -- why is America washed with guns, Your Honor?  Is

2    it criminals or is it a -- washing guns with

3    law-abiding citizens who want to have them for their

4    personal security?

5           I think it's the latter.  There are a lot of

6    criminals that have them.  But the reason that we have

7    the Second Amendment and other aspects of gun

8    possession is people want them for their personal

9    security.  And that's the purpose, self-defense,

10   personal security.

11          THE COURT:  Well, does this statute then

12   suggest that we look at the specific purpose,

13   security, as justification for taking a firearm into a

14   federal facility?  In other words, do we have to look

15   to see why self-protection was necessary --

16          MR. HOTCHKISS:  I don't believe so.

17          THE COURT:  -- in a federal facility?

18          MR. HOTCHKISS:  Not any more than when

19   somebody goes to get a weapon, are they asked, "What

20   kind of security interest do you have?

21          People -- different people have their own

22   different levels of security and personal security.

23   And some gun owners don't even have to carry them to

24   feel secure.  Some do.

25          MR. WALSH:  Well, I mean, this is an aside,

**PAUL BACA PROFESSIONAL COURT REPORTERS**

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 47

1    and I don't have a problem with the Court, you know,

2    considering the self-defense notion.  But that really

3    hasn't been brought out before as far as why he had

4    it.

5         THE COURT:  And that's why I'm asking.  In

6    re- -- in analyzing this statute, because it says

7    "other lawful purposes," are we supposed to look at

8    what the -- whether there were other lawful purposes

9    or what those purposes are?

10        MR. WALSH:  I think -- I think one thing that

11   it does not refer to is that it does not encompass

12   conduct outside of a federal facility.  So that's

13   where the defendant's argument fails.

14        You know, it's referring to some type of

15   lawful purpose that is taking place inside a federal

16   facility, like getting a hunting permit or perhaps

17   being on a federal firing range or something along

18   those lines.

19        You know, again, we're hearing references to

20   the New Mexico Constitution.  It does not apply.  It

21   does not matter.

22        MR. HOTCHKISS:  I don't know that it's a

23   requirement, to get a hunting license, to carry a gun

24   to get one.  I mean, you could walk in to get a

25   hunting license without bringing your gun with you.

**PAUL BACA PROFESSIONAL COURT REPORTERS**

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1   There's no requirement that you bring your gun with

2   you.

3         The way the statute is interpreted and the

4   way that I interpret it, and I believe the way Judge

5   Schneider interpreted it, is that since -- you can try

6   to take the word "hunting" out of the statute, but

7   it's there and we have to deal with it.

8         You can't hunt in a federal facility.  That's

9   a crime.  It would not be a lawful purpose.  You can't

10  hunt in a federal facility.

11        So the reference to it has to, therefore,

12  mean what you were doing before you stepped across

13  that line.  Before Mr. De La Cruz stepped across that

14  line into the federal facility, that's what it has to

15  mean.

16        THE COURT:  Well, I agree that you can't hunt

17  in a federal facility.  But that's -- then where I

18  look at the word "incident to," I mean, I don't -- I

19  don't read this language as meaning that you -- that

20  hunting in a federal facility is addressed.  I mean,

21  when it's "incident to hunting," then -- I mean, I see

22  your point.  Don't -- I don't want you to think that I

23  don't understand what you're arguing.  I do understand

24  what you're arguing.

25        I guess, though, that I'm more focused on the

Page 49

 1   "other lawful purposes."  You're telling me that

 2   "other lawful purposes" can't be read independent of

 3   "hunting."

 4           MR. HOTCHKISS:  No, I -- I am -- my argument

 5   is that it is other -- "other" means other than

 6   hunting.  So in that respect, I do read it

 7   independent.  But there is no -- there are no commas.

 8   There is no way that this is -- that the way that this

 9   is written -- in my opinion, the plain meaning of it

10   is "hunting or other lawful purposes."  It's not

11   hunting or related purposes to hunting, or hunting and

12   the like.  "Other lawful purposes," like I cited

13   Luckley versus Vallejo in my brief.

14           Broad meaning -- that phrase is typically

15   given a broad meaning.  And it doesn't say "related,"

16   and there is no limiting language in the statute.

17   It's "other lawful purposes."

18           And the last point is is that I have

19   consistently cited to Article 2, Section 6 of the

20   New Mexico Constitution.  And right on the face of it

21   is security and defense as the purpose.  So that is in

22   the record.  That has been brought forth.

23           THE COURT:  Did you have something else?

24           MR. WALSH:  Yes.  I'd like to reiterate,

25   Your Honor.  I think the defense is reading language

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 50

1    into subsection (d)(3) that doesn't exist.  You know,

2    he is indicating that it has to refer to what he did.

3    What were you doing before you crossed that line?

4         We disagree.  We think that the "other lawful

5    purposes" has to be read within the context of

6    hunting.  Obviously, yes, you can't hunt in a -- in a

7    federal building, but you can have a lodge that is

8    incident to hunting, a situation where you can place

9    your rifles outside of a particular building, and they

10   wanted to be sure that it didn't encompass any type of

11   conduct along those lines.

12        I didn't quite get from that citation in

13   defendant's brief that the "other lawful purposes" is

14   supposed to be read in a broad manner.

15        I cited in our brief to Begay, the armed

16   career criminal statute, where there was an

17   "otherwise" clause, so-called "residual" clause.  The

18   point being, without getting into too much detail, the

19   Supreme Court recently said that, "Hey, you've got to

20   look at the words that preceded the 'otherwise' clause

21   to give it context."  And that -- it wasn't broad and,

22   therefore, it did not include a felony DUI.  It kind

23   of provides some guidance here, in that "other lawful

24   purposes" has to be read within the context of

25   "hunting," as well.  And especially when you have the

2bef0440-85b8-4e05-8f71-ef5f519c5d93

1    legislative history that indicates as much.  So...

2            THE COURT:  Let me ask you this.  Do either

3    of you think that the applicability of the exception,

4    more specifically, the "other lawful purposes," is a

5    fact issue?

6            MR. WALSH:  I don't know.  I don't -- I'm not

7    entirely sure.  It was certainly something that I

8    think both parties were going to research if the

9    government prevailed in this appeal.  Because, then,

10   we've got a jury trial on the horizon.  And whether

11   that could be presented to a jury or not, I'm not

12   entirely sure.  I wouldn't want to kind of speculate

13   before the Court.

14           THE COURT:  All right.

15           Do you have any comment on that,

16   Mr. Hotchkiss?

17           MR. HOTCHKISS:  I don't.  We've just been

18   relying on the fact that in Article 2, Section 6 it

19   plainly states there "for security."  And so I -- I

20   have -- I don't have any thoughts about that right

21   now, Your Honor.

22           THE COURT:  All right.

23           Well, do either of you have any other

24   comments?

25           MR. WALSH:  Nothing further at this time.

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 52

1          MR. HOTCHKISS:  Nothing further, Your Honor.

2          THE COURT:  All right. I was -- I'm going to

3    take just a couple of minutes.  I'll return, and

4    either I will give you my decision or I will tell you

5    when you can expect my decision.  So don't go too far

6    away.  I'll just take a short recess.

7          (A recess was taken.)

8          THE COURT:  Please be seated.

9          Well, there are a couple of other things that

10   I would like to look at, so I'm going to take this

11   matter under advisement, and I will get a decision to

12   you before the holiday.

13         So is there anything else to come before the

14   Court?

15         MR. WALSH:  I was just going to say,

16   Your Honor, as far as my particular schedule goes, if

17   the Court needs additional time, that's fine with me.

18   I'm set to be on leave.  But so as far as --

19         THE COURT:  I just hate to leave you all

20   hanging any longer than necessary.  If I can get it

21   out next week, I will.  And if I need a little time,

22   I -- I won't delay.

23         MR. WALSH:  The case has been stayed, I

24   think, pending the resolution of this.  So...

25         THE COURT:  Okay.  All right.

2bef0440-85b8-4e05-8f71-ef5f519c5d93

Page 53

1          Is there anything further?

2          MR. HOTCHKISS:  Nothing further, Your Honor.

3          THE COURT:  All right.  With that, then,

4    we'll been in recess.

5          (Proceedings concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PAUL BACA PROFESSIONAL COURT REPORTERS**

Page 54

1                         CERTIFICATION

2

3    I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.  I further certify that the transcript fees

6    and format comply with those prescribed by the Court

7    and the Judicial Conference of the United States.

8

9    Date:  December 18, 2009

10

11                          _____
                            PAUL BACA, RPR, CCR
12                          Certified Court Reporter #112
                            License Expires:  12-31-09
13

14

15

16

17

18

19

20

21

22

23

24

25

2bef0440-85b8-4e05-8f71-ef5f519c5d93